# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2635-18T3

S.S.,

      Plaintiff-Respondent,

v.

M.J.C.,

      Defendant-Appellant.

_____

Argued telephonically[1] March 18, 2020 –
Decided April 15, 2020

Before Judges Fuentes, Haas and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-0733-19.

Richard J. Williams, Jr. argued the cause for appellant (Mc Elroy Deutsch Mulvaney & Carpenter, LLP, attorneys; Richard J. Williams, Jr. and David T. O'Sullivan, of counsel and on the brief).

---

[1] https://www.njcourts.gov/notices/2020/n200315a.pdf

Robert A. Epstein argued the cause for respondent (Ziegler, Zemsky & Resnick, attorneys; Robert A. Epstein, on the brief).

PER CURIAM

Defendant M.J.C.[2] appeals from a February 4, 2019 final restraining order (FRO) entered in favor of plaintiff S.S. pursuant to the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant also appeals from a February 28, 2019 order awarding plaintiff counsel fees. We affirm both orders.

The parties started dating in December 2014 and ended their relationship in October 2016. Their son was born in May 2016. Due to the tumultuous nature of the parties' relationship, plaintiff obtained two orders of protection against defendant from a New York court. One issued in May 2016; the other issued in October 2016.[3] Subsequently, pursuant to a stipulation incorporated into a New York court order dated August 28, 2017, the parties were directed to conduct parenting time exchanges at their local police stations.

---

[2] We refer to the parties by initials to protect their privacy. R. 1:38-3(d)(12).

[3] Plaintiff voluntarily dismissed the order from May 2016 before she applied for another order of protection in October 2016.

After plaintiff relocated to Edgewater in September 2017, exchanges occurred at either the Edgewater Police Department or at a police station near defendant's home in New York. On October 10, 2018, plaintiff's nanny met defendant at the Edgewater Police Department to exchange the parties' son. Purportedly, the child resisted the exchange. Contrary to the August 28, 2017 court order, defendant left the police station and walked with the nanny and his son to a Dunkin' Donuts across the street from plaintiff's apartment complex, ostensibly to facilitate the exchange of the child. At the FRO hearing, the nanny testified that during the October 10 exchange, defendant told her, "if [plaintiff] knows I'm here, she's going to . . . be upset." Plaintiff became aware of defendant's deviation from the court order and testified at the FRO hearing that this was the first time in more than a year that defendant was physically close to her home and she "became terrified of that fact."

On October 11, 2018, when the parties met for another parenting time exchange at the Edgewater Police Department, plaintiff asked defendant to do her a "favor" and not go near her apartment complex. He responded, "absolutely not, absolutely not, please, please." He told plaintiff he would "walk wherever [he] would like to." As plaintiff left the police station, carrying the parties' son, defendant followed her and remarked that he "might go there right now," adding

3

"I'm going to go to Five Guys and I'm going to go to Dunkin' Donuts." Both establishments were located next to plaintiff's apartment building. According to plaintiff's testimony, defendant was smiling when he made his comments and had a "sinister look on his face" as he started clapping loudly behind her. Plaintiff testified, "I knew I had to keep it together because I had the baby in my arms . . . but inside my knees were shaking." She recalled, "all his threats and his past threats telling me that he was going to put me in a body bag, it just started coming back to me and I knew that I was a walking target."

This incident was captured on defendant's body camera. When the camera footage was produced in discovery, plaintiff realized that although she thought she heard defendant threaten to put her in a "body bag," no such threat was made. Accordingly, she amended her complaint to withdraw any reference to this alleged threat. But each iteration of plaintiff's complaint alleged that defendant committed the predicate acts of harassment, N.J.S.A. 2C:33-4, and terroristic threats, N.J.S.A. 2C:12-3.

At the FRO hearing, in addition to the testimony plaintiff provided about the October 11, 2018 incident, she testified about several prior acts of domestic violence allegedly committed by defendant during the relationship. We need not recite this portion of plaintiff's testimony in detail, but note the trial judge

remarked she "was shocked to see the level of the reported, and unreported events." These events included defendant grabbing plaintiff by her hair, spitting in her face, biting her hand, calling her vulgar names and threatening to bury her if she did not use defendant's last name for the baby when he was born. Defendant denied committing any acts of domestic violence.

On February 4, 2019, following a six-day trial, the judge rendered a thoughtful and comprehensive oral opinion, finding plaintiff met her burden for the issuance of an FRO.[4] In the course of her decision, the judge reviewed the parties' exhibits[5] and testimony, as well as the testimony of a police officer, plaintiff's nanny and defendant's brother. The judge credited plaintiff's testimony over that of the defendant before concluding defendant committed the predicate acts of harassment and terroristic threats. Next, the judge properly analyzed plaintiff's need for an FRO, guided by the factors set forth in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006) and determined an FRO was

---

[4] The February 4, 2019 FRO was amended on February 8, 2019 to more fully conform with the judge's oral opinion.

[5] We typically do not consider exhibits or other evidentiary material not part of the trial court's record. Davis v. Devereux Found., 209 N.J. 269, 296 n.8 (2012). See R. 2:5-4(a). There is no basis to deviate from our ordinary scope of review here. Thus, we grant plaintiff's motion to strike Da101-09 from defendant's appendix.

necessary to prevent further abuse. Further, the judge directed defendant to undergo a risk assessment and continued the existing parenting time arrangement pending the outcome of that assessment. Lastly, the judge awarded plaintiff counsel fees, but deferred fixing the amount of the fee award.

Defendant appealed from the February 4, 2019 FRO and filed an emergent application before the trial court, seeking to stay the risk assessment and counsel fee provisions of the FRO. The judge denied his emergent application, and fixed plaintiff's fee award in the amount of $38,295.04, to be paid within thirty days.

In April 2019, plaintiff moved to enforce her award of counsel fees. Her application was granted, and she was awarded additional counsel fees totaling $3060. Additionally, in April 2019, defendant filed a motion seeking a stay of the trial court proceedings. We denied the stay.

On appeal, defendant argues the trial court erred in finding he committed any predicate act of domestic violence and that the judge abused her discretion by finding plaintiff needed an FRO. Further, he contends any fee award must be vacated because he committed no act of domestic violence. We are not persuaded.

Our review of a trial judge's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A judge's fact-finding is "binding on appeal

when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). This is so because the judge has the opportunity to see and hear the witnesses as they testify, thereby developing a "'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 396 (2009) (quoting D.Y.F.S. v. E.P., 196 N.J. 88, 104 (2008)). A judge's purely legal decisions, however, are subject to our plenary review. Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver, 387 N.J. Super. at 125. First, the judge must determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a). Id. at 125-26. The judge must construe any such act against the parties' history to

"understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); N.J.S.A. 2C:25-29(a)(1). Second, if a predicate offense is proven, the judge must consider the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6) to determine whether a restraining order is needed to protect the victim from further abuse. Silver, 387 N.J. Super. at 126-27; see also J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011).

Whether a restraining order should issue depends on the seriousness of the predicate offense, "the previous history of domestic violence between the plaintiff and defendant[,] including previous threats, harassment and physical abuse," and "whether immediate danger to the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. l995) (citing N.J.S.A. 2C:25-29(a)). "[N]ot only may one sufficiently egregious action constitute domestic violence . . . even with no history of abuse between the parties, but a court may also determine that an ambiguous incident qualifies as prohibited conduct, based on a finding of violence in the parties' past." Cesare, 154 N.J. at 402.

Regarding the predicate acts set forth in plaintiff's most recent amended complaint, we first address whether the trial court properly found defendant

harassed plaintiff. N.J.S.A. 2C:33-4 defines harassment, in relevant part, as follows:

> [A] person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; [or]
>
>     . . . .
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

Proof of a defendant's purpose to harass is an essential element of N.J.S.A. 2C:33-4. See L.D. v. W.D., 327 N.J. Super. 1, 5 (App. Div. 1999). "A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result." State v. Hoffman, 149 N.J. 564, 577 (1997) (quoting N.J.S.A. 2C:2-2(b)(1)). "A finding of a purpose to harass may be inferred from the evidence presented[,]" and "[c]ommon sense and experience may inform that determination." Ibid. "Prior conduct and statements may be relevant to and support an inference of purpose." State v. Castagna, 387 N.J. Super. 598, 606 (2006) (citing to Cesare, 154 N.J. at 414). Guided by these principles, we are

9

satisfied there is ample credible evidence in the record to support the trial judge's findings that defendant committed the predicate act of harassment and that a restraining order was needed to protect plaintiff from further abuse.

We are not persuaded, however, that defendant committed the predicate act of terroristic threats. A person commits the act of terroristic threats

> if that person threatens to commit any crime of violence with the purpose to terrorize another or . . . threatens to kill another with the purpose to put [that other person] in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out.

> [N.J.S.A. 2C:12-3.]

Proof of terroristic threats must be assessed by an objective standard. State v. Smith, 262 N.J. Super. 487, 515 (App. Div. 1993). "The pertinent requirements are whether: (1) the defendant in fact threatened the plaintiff; (2) the defendant intended to so threaten the plaintiff; and (3) a reasonable person would have believed the threat." Cesare, 154 N.J. at 402. Here, we are not satisfied defendant's actions met these requirements and qualified as terroristic threats. But plaintiff needed only to prove that one predicate act set forth in N.J.S.A. 2C:25-19(a) occurred. Silver, 387 N.J. Super. at 125. In other words,

a single act is sufficient. <u>Cesare</u>, 154 N.J. at 402. As plaintiff met her burden in establishing the predicate act of harassment, we affirm the FRO.

Lastly, we perceive no basis to disturb plaintiff's counsel fee award. Pursuant to N.J.S.A. 2C:25-29(b)(4), a judge may issue "[a]n order requiring the defendant to pay to the victim monetary compensation for losses suffered as a direct result of the act of domestic violence," which includes "an award of reasonable attorney's fees and costs incurred in successfully defending against a challenge to a final restraining order issued by the trial court." <u>Grandovic v. Labrie</u>, 348 N.J. Super. 193, 197 (App. Div. 2002).

Here, defendant does not address the reasonableness of the counsel fee award. He simply argues, "[b]ecause the entry of the FRO must be vacated for lack of a predicate act of domestic violence, so too must the fee award." As defendant's argument is solely premised on the mistaken claim that the trial judge erroneously granted the FRO, we perceive no basis to disturb the award of counsel fees. To the extent we have not addressed defendant's remaining arguments, we find they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-2635-18T3